JOSEPH EHRLICH - #84359
MARK R. MEYER - #238231
Losch & Ehrlich - Attorneys at Law
425 California Street, Suite 2025
San Francisco CA 94104
Telephone:    (415) 956-8400
Facsimile:    (415) 956-2150
Email:        je@losch-ehrlich.com
              mm@losch-ehrlich.com

Attorneys for Defendant
Resort Vacations, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHREN DIVISION

| | |
|---|---|
| RONALD RUDOLPH,<br><br>    Plaintiff,<br><br>v.<br><br>RESORT VACATIONS, INC.,<br><br>    Defendants. | Case No. 8:15-cv-00735-JVS-DFM<br><br>**MEMORANUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO 12(b)(6)**<br><br>Date:   July 20, 2015<br>Time:   1:30 p.m.<br>Dept.:  Courtroom 10C<br><br>Complaint Filed:   May 8, 2015<br>Judge :            James V. Selna<br>Mag. Judge:        Douglas F. McCormick |

//
//
//
//

## TABLE OF CONTENTS

I. Introduction ........................................................................................................ 6

II. Discussion ......................................................................................................... 6

    A. Legal Standard: Motion to Dismiss ......................................................... 6

        1. A Complaint may be dismissed on a dispositive issue of law. ........................................................................................... 6

    B. Plaintiff alleges a breach of Penal Code section 632.7 ............................ 7

    C. Legal Standard: Statutory Interpretation .................................................. 7

        1. This Court must predict how the California Supreme Court would interpret 632.7. ............................................................ 7

        2. The California Supreme Court seeks to determine the Legislature's intent to effectuate the law's purpose. .................... 7

    D. The Context and History of Penal Code Section 632.7 ........................... 8

        1. Penal Code section 632.7 was enacted as part of a series of laws addressing telephone privacy. ................................................ 8

        2. In passing section 632.7, Legislature's purpose was to prohibit third parties from use FM or other radio receivers from obtaining and recording communications. ............................................................................. 9

    E. "Receive" should be given its plain meaning of "to convert incoming radio waves into perceptible signals." ................................... 10

        1. Receive has multiple meanings, including a broad definition and a definition related to radio. ....................................... 10

        2. "Receive" should be given its plain, radio-related meaning because the Legislature used the word "receive" in the context of radio communications and intended Section 632.7 to apply to innocent third-party reception of radio communications. .............................................. 10

        3. A broad definition of "receive" is inconsistent with the context of the statute and rules of statutory construction. ......................................................................................... 11

        4. If two reasonable interpretations exist, the Rule of Lenity instructs this Court to construe the statute in favor of the defendant. ................................................................ 13

    F. Caselaw .................................................................................................. 13

        1. Young v. Hilton Worldwide ........................................................ 14

        2. Contrary case law is not persuasive ........................................... 15

III.     Conclusion .................................................................................................16

# TABLE OF AUTHORITIES

**Cases:**

*Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999 (C.D. Cal. 2014)......................16

*Bales v. Sierra Trading Post, Inc.*, No. 13CV1894 JM KSC, 2013 WL 6244529, at *3-4 (S.D. Cal. Dec. 3, 2013)......................16

*Bernstein v. United Collection Bureau, Inc.*, No. 13-CV-01251-GPC-KSC, 2013 WL 5945056, at *2-3 (S.D. Cal. Nov. 5, 2013)......................16

*Brown v. Defender Sec. Co.* No. CV 12-7319-CAS PJWX, 2012 WL 5308964, at *5 (C.D. Cal. Oct. 22, 2012)......................15

*Conley v. Gibson*, 355 U.S. 41 (1957)......................6

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir.2009)......................7

*DuBois v. Workers' Comp. Appeals Bd.*, 5 Cal. 4th 382 (1993)......................11

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)......................6

*Horowitz v. GC Services Ltd. Partnership* (S.D. Cal., Apr. 28, 2015, 14CV2512-MMA RBB) 2015 WL 1959377, at *11-12......................16

*Horwich v. Superior Court*, 21 Cal. 4th 272 (Cal. 1999)......................8

*Kairy v. SuperShuttle Intern.*. 660 F.3d 1146 (9th Cir. 2011)......................7

*Miller v. Collectors Universe, Inc.* 159 Cal. App. 4th 988 (2008)......................8

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 3:12-CV-01685-BAS, 2015 WL 1346110, at *4-6 (S.D. Cal. Mar. 24, 2015)......................16

*Neitzke v. Williams*, 159 Cal. App. 4th 988 (2008)......................6

*People v. Chavez*, 44 Cal.App.4th 1144 (1996)......................9

*People v. Story*, 45 Cal. 4th 1282 (2009)......................13

*Sierra Club v. Superior Court*, 57 Cal. 4th 157 (2013)......................7

*Simpson v. Best W. Int'l, Inc.*, No. 3:12-CV-04672-JCS, 2012 WL 5499928, at *8 (N.D. Cal. Nov. 13, 2012)......................15

*State v. Howard*, 679 P. 2d 197 (Kan. 1984)......................9

*State v. McVeigh*, 224 Conn. 593 (1993)......................9

| # | | |
|---|---|---|
| 1 | *Wells v. One2One Learning Foundation*, 39 Cal.4th 1164 (2006) | 8 |
| 2 | *Young v. Hilton Worldwide, Inc.*, 565 F. App'x 595 (9th Cir. 2014) | 14, 15 |

**Statutes:**

| | | |
|---|---|---|
| 4 | Penal Code § 630 | 7, 10, 13 |
| 5 | Penal Code § 631 | 7 |
| 6 | Penal Code § 632.5 | 8, 9, 14 |
| 7 | Penal Code § 632.6 | 8, 9, 10, 14 |
| 8 | Penal Code § 632.7 | 5-15 |

**Other:**

| | | |
|---|---|---|
| 10 | Connely, Lloyd G, *Author's Statement of Intent* re: AB2465 | 9 |
| 11 | Stats. 1990, ch. 696, § 2, p. 3268 | 8 |
| 12 | *Webster's Ninth New Collegiate Dictionary,* p. 982 (1985) | 9 |

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION

Cordless and cellular phones use radio waves to work. This means someone can listen in on a call, just as anyone can listen to music using an FM receiver.

In 1992, the California Legislature passed a law to prevent third parties from using receivers to overhear and also record phone calls made with cordless and cellular phones, Penal Code section 632.7

In this action, Plaintiff alleges RVI violated Section 632.7 by calling him on his cell phone and recording the call without his consent.

Plaintiff's complaint must be dismissed because Section 632.7 does not prohibit the party initiating a phone call from recording that call. Instead, it prohibits others from "intercepting" or "receiving" the cordless or cellular radio waves and recording the conversation.

This conclusion is supported by the context of the statute, the legislation history, and standard canons of statutory construction such as: every word should be given effect; absurd results should be avoided; and the rule of lenity.

## II. DISCUSSION

### A. Legal Standard: Motion to Dismiss

#### 1. A Complaint may be dismissed on a dispositive issue of law.

> Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon, supra*, 467 U.S., at 73, 104 S.Ct., at 2232, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one. What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.

*Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 1832, 104 L. Ed. 2d 338 (1989).

A court must take all allegations of material fact as true, but "conclusory allegations of law

and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir.2009).

### B.     Plaintiff alleges a breach of Penal Code section 632.7

Plaintiff alleges a violation of California Penal Code Section 632.7 (enacted in 1992), which provides:

> (a) Every person who, without the consent of all parties to a communication, **intercepts or receives and intentionally records,** or assists in the interception or reception and intentional recordation of, **a communication transmitted between** two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by . . .

Sections 632.7 permits a person injured by a violation of Chapter 1.5 to seek $5,000 or three times actual damages.

The question presented is whether Section 632.7 authorizes imprisonment, fines, and civil remedies against a person who initiates a phone call to a cellular phone customer and records that call.

### C.     Legal Standard: Statutory Interpretation

#### 1.     This Court must predict how the California Supreme Court would interpret 632.7.

When construing Penal Code section 632.7, this Court must apply the law as it believes the California Supreme Court would apply it. In the absence of a controlling California Supreme Court decision, this Court must predict how the California Supreme Court would decide the issue. *Kairy v. SuperShuttle Intern.,* 660 F.3d 1146, 1150 (9th Cir. 2011).

The California Supreme Court has not addressed whether 632.7 applies to the person who initiates a phone call.

#### 2.     The California Supreme Court seeks to determine the Legislature's intent to effectuate the law's purpose.

The "fundamental task" of the Court "is to determine the Legislature's intent so as to effectuate the law's purpose." *Sierra Club v. Superior Court,* 57 Cal. 4th 157, 165-66, 302 P.3d

1026, 1031-32 (2013). First, the Court examines the statutory language, giving it a plain and commonsense meaning. It is not viewed in isolation, "but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.' *Id.* "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." *Id.* The language is considered "in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." *Id.*

The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. *Horwich v. Superior Court*, 21 Cal. 4th 272, 276 (Cal. 1999). *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190; see also *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 999, 72 Cal. Rptr. 3d 194, 202 (2008) (statute should be construed "so as to avoid absurd or unreasonable results" and "to preserve its constitutionality").)

### D. The Context and History of Penal Code Section 632.7

#### 1. Penal Code section 632.7 was enacted as part of a series of laws addressing telephone privacy.

Section 632.7 resides in Part I of the Penal Code, Title 15, Chapter 1.5, "Invasions of Privacy."

Section 630 expressly sets forth the legislative intent of the chapter: to address "new devices and techniques for the purpose of eavesdropping upon private communications" and the resulting "invasion of privacy."

Section 631, prohibits tapping phones or intercepting communications. Section 632 (added in 1967) prohibits using a device to record or eavesdrop on a "confidential communication."

In the 1980's and 1990's, the Legislature added additional sections to address cellular and cordless telephones. Request For Judicial Notice ("RJN"), ¶ C, D.

Section 632.5 (added in 1985) prohibits maliciously intercepting or receiving calls between a cell phone and another cell phone or landline. Section 632.6 (added in 1990) prohibits maliciously intercepting or receiving calls between a cordless phone and a cordless phone, a cell phone or a landline.

Finally, in 1992, the Legislature enacted Section 632 which prohibits the interception or receiving and intentionally recording of cellular or cordless phone calls. Unlike Sections 632.5 and 632.6, a defendant's conduct did not need to be "malicious."

### 2. In passing section 632.7, Legislature's purpose was to prohibit third parties from use FM or other radio receivers from obtaining and recording communications.

When Sections 632.5, 632.6, and 632.7 were being considered by the Legislature (in the late 1980's and early 1990's), it was common for cordless or cellular phone calls to be overheard by others. RJN, ¶ E, G.

As explained in *State v. Howard*, 679 P. 2d 197 (Kan. 1984), cordless phones operated by using ordinary FM radio signals that could be picked up by a radio or, "If two cordless telephones were hooked to separate lines and were physically close enough, calling one telephone would cause the second telephone to ring and both telephones would be privy to the same conversation.." *Id.* at 239; see also, e.g., *State v. McVeigh*, 224 Conn. 593 (1993) ("any person with an FM receiver tuned to the same frequency as a particular cordless telephone can overhear telephone calls going out or coming in over that cordless telephone").

The Legislature first addressed this issue by prohibiting the "malicious" interception or reception of these radio-based phone calls. Pen. Code §§ 632.5, 632.6. In passing 632.6 in 1990, the Legislature declared that "[p]arties to a cordless telephone communication have a reasonable expectation of privacy which the right of privacy protects, and this act is intended to provide a legal recourse to those persons whose private cordless telephone communications have been **maliciously invaded** by persons not intended to receive those communications." Stats. 1990, ch. 696, § 2, p. 3268; *People v. Chavez*, 44 Cal.App.4th 1144 (1996).

But, these statutes raised the possibility that a "non-malicious" person could listen in on phone calls and record them.

In August 1991, Michael S. Sands wrote a letter to Assemblyman Connelly. RJN, ¶ B, Ex. 2. In that letter, Mr. Sands identified what he thought of as a gap in the statutory scheme. Because of the nature of cordless and cell phones, it was possible for a third party to "non-maliciously" receive phone calls and then *record them*.

Mr. Sands accepted that a cordless or cellular radio phone may be "inadvertently overheard because of the use of radio," but believed it should be illegal for these third parties to record the received communication. *Id.*

To address this issue, Assemblyman Connelly introduced AB2465 to add Section 632.7. He explained that "innocent, merely curious, or non-malicious interception of cellular or cordless telephone conversations will remain legal. However it will be illegal to record the same conversation." RJN, Ex. 1, ¶ A, Connelly, Lloyd G, *Author's Statement of Intent* re:AB2465.

In sum, it was the intent of the Legislature to prevent third parties—who might be listening in on a radio-based phone call without bad intent—from recording those phone calls.

### E. "Receive" should be given its plain meaning of "to convert incoming radio waves into perceptible signals."

#### 1. Receive has multiple meanings, including a broad definition and a definition related to radio.

Federal district courts have disagreed as to whether Section 632.7 prohibits a party to a phone call from recording that call.

The first step in construing Section 632.7 is to examine the statutory language, giving it a "plain and commonsense meaning."

In this case, "receive" has multiple "plain and commonsense" meanings.

First, "receive" has a broad meaning: "to come into possession of."

Second, it also has a meaning specific to radio: "**Receive**" means "**to convert incoming radio waves into perceptible signals**." *Webster's Ninth New Collegiate Dictionary*, p. 982 (1985); http://www.merriam-webster.com/dictionary/receive, retrieved June 10, 2015. Receive, receiver, and reception are all terms commonly used in connection with the conversion of incoming radio waves into perceptible signals. RJN, ¶ F.

#### 2. "Receive" should be given its plain, radio-related meaning because the Legislature used the word "receive" in the context of radio communications and intended Section 632.7 to apply to innocent third-party reception of radio communications.

A person "receives" radio waves, whether by using an FM radio, or when they listen in on someone else's radio-based phone calls.

The Legislature used the word "receive" in the context of radio-based communication.

This is indicated by the Legislature's use of the phrase "intercepts or receives" in Sections 632.5, 632.6, and 632.7. Each of these sections deal specifically with *radio* communications that can be "received" by third parties.

Next, when enacting Section 632.6, the Legislature's statement of intent shows it used the word "receive" and "reception" with its radio related meaning. It stated "this act was intended to provide legal recourse to those persons whose private cordless telephone conversations have been **maliciously invaded** by persons not intended to **receive** those communications . . . . It is not the intent of the Legislature to . . . prohibit **the** interception or **reception of radio frequencies** other than the **unauthorized** malicious interception or **reception of cordless telephone radio frequencies**." (RJN) The "reception" the Legislature referred to is that of *radio* reception.

As described by Mr. Sands and the author of Section 632.7, the statute was specifically intended to address issues raised by *radio* reception by third parties, not a person who was initiating a phone call on a landline.

There is no hint in the letter of Mr. Sands, or the statement of Assemblyman Connelly that the statute was intended to do anything other than to prevent curious radio hobbyists from recording calls. Giving "receive" its radio-related definition is consistent with this intent

Considering the context of radio technology, and the Legislative History set forth above, the word meaning of "receive" should be given its plain, dictionary definition of "to convert incoming radio waves into perceptible signals."

      3.      **A broad definition of "receive" is inconsistent with the context of the statute and rules of statutory construction.**

            a.      **Significance should be given to every word of the statutes; a broad definition would render "intercept and receive" meaningless.**

"If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." *DuBois v. Workers' Comp. Appeals Bd.*, 5 Cal. 4th 382, 388, 853 P.2d 978, 981 (1993).

Here, there is more than one possible definition of "receive." If possible, it should be construed in a manner to give it significance.

If "receive" is defined broadly to mean "any receipt of information," the words "intercept and receive" have *no significance* in Section 632.7.

Every person who records a communication has—under the broadest definition—"received" the communication. Therefore, the words "intercept" and "receive" are rendered superfluous.

This can be demonstrated by simply striking out "intercepts or receives" from the statute. Striking out this language would *not change the meaning of the statute*: "Every person who, without the consent of all parties to a communication, ~~intercepts or receives and~~ intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted . . . ."

In contrast, by defining "receive" to mean "convert incoming radio waves into perceptible signals," all words are given significance. The word "receive" would cover third parties who obtain access to the call by way of radio reception, and "intercept" would cover other acts by third parties (including conduct unrelated to radio reception) that allowed access to the communication.

### b. It is absurd to prohibit recordings of radio calls, but allow recordings of other phone calls.

An expansive interpretation of Section 632.7—prohibiting recording by parties initiating a call—leads to some odd or absurd consequences.

The harm that the Legislature was trying to prevent was an invasion of privacy.

If the goal of the legislature was to protect calls from being recording *by parties to the call*, the Legislature would have prohibited recording for *all calls*, regardless of the technology used.

It does not make sense that the Legislature would prevent *parties* from recording non-confidential radio calls (to protect the privacy), but then allow recording of non-confidential land-line calls.

Under the plaintiff's view, a defendant's liability can depend solely upon the technology the other person employs—even though the technology has no relationship to whether the plaintiff's privacy has been invaded by recording the call.

RVI had no knowledge of what technology the Plaintiff was using. Even if RVI thought it knew what technology Plaintiff was using, the Plaintiff could have his calls forwarded to a cell phone. It would be unfair and absurd to make liability depend upon facts outside the knowledge or

control of RVI.

In contrast, a third party "receiving" a radio-based call knows the technology is being used and has fair warning that recording the call would violate Section 632.7.

### c. A broad definition of "Receive" is not consistent with the definition of "communication" as used in Section 630 et seq.

In the context of section 632 et seq., a "communication" is *the exchange of information between participants*. A phone call is treated as a single "communication." A phone call is *not* a series of "communications."[1]

Understood in this singular manner, a participant to a communication does not "receive" the communication—even if "receive" is defined broadly—because a person generally does not "receive" their own statements. Only a third party can "receive" the entire "communication."

### 4. If two reasonable interpretations exist, the Rule of Lenity instructs this Court to construe the statute in favor of the defendant.

Section 632.7 is a criminal statute authorizing a fine and imprisonment. The rule of lenity provides that where a statute susceptible to two reasonable interpretations, this Court should generally adopt "that interpretation more favorable to the defendant." *People v. Story*, 45 Cal. 4th 1282, 1294, 204 P.3d 306, 314 (2009).

Here, the language and context of the statute together with the Legislative History show that intent of the Legislature in using "intercept and receive' was to prevent third party recordings, not participant recordings. But, even if the intent of the statute remained ambiguous, this Court should apply the rule of lenity to make an interpretation favorable to the defendant.

### F. Caselaw

Some judges have looked at the context of the statute and legislative intent and found that the Legislature intended Section 632.7 to apply only to parties who are not the intended recipients of the communication.

---

[1] If a single phone call was *not* considered a single "communication," but a series of communications, a single phone call could result in hundreds or thousands of "communications." Thus, recording a *single phone call* could then result in *millions of dollars in fines*. This would be an absurd and clearly unintended result.

Others have held that Section 632.7's prohibition of recording applies to a party to the call, reasoning that a person who makes a call will "receive" a "communication" from the other party to the call during a conversation.

### 1. Young v. Hilton Worldwide

In *Young v. Hilton Worldwide, Inc.*, the plaintiff alleged violations of Penal Code Sections 632 and 632.7 because his own calls to 1-800-HAMPTON for reservations and billing were being recorded. *Young v. Hilton Worldwide, Inc.*, 565 F. App'x 595 (9th Cir. 2014).

The trial court dismissed the Section 632 claim on the ground that these calls were objectively not confidential. Even though the trial court did not specifically address Section 632.7, the matter was dismissed.

On appeal, the Ninth Circuit held that the claim for violation of 632.7 had not been addressed and remanded. (*Young v. Hilton Worldwide, Inc.*, 565 F. App'x 595, 596 (9th Cir. 2014) The majority concluded that the defendant's arguments with respect to 632.7 were waived because they were not raised below and refused to address them. (*Id.*)

Judge Motz filed a "dissenting opinion" on the ground that it was not clear whether the district court considered section 632.7 and proceeded to consider the defendants' arguments.[2] Judge Motz concluded that—when appropriately raised— the scope of 632.7 would be appropriate for certification to the California Supreme Court.

After laying out the history and purpose of Sections 630 et seq., Judge Motz provided his analysis of how "receive" should be construed under California law:

> I find that the word "receive" in § 632.7 is ambiguous. I recognize, of course, that Hilton did in one sense "receive" the communication. However, so would a person who "intercepts" a communication, and yet such a person is separately mentioned in § 632.7. The word "receive" could therefore be limited to third parties who unintentionally receive the communication. Accordingly, I must consider other indicia of the legislature's intent to determine the scope of § 632.7.
>
> The apparent purpose of § 632.7 supports limiting its reach to third

---

[2] While the opinion was labeled a "dissent," Judge Motz appears to agree on the outcome of the appeal: remand of the matter to the district court. Judge Motz only disagreed to the extent he was willing to entertain defendants' new arguments on appeal and provide instruction on these issues to the trial court below.

> parties who unintentionally receive the communication. The advent of cellular technology introduced a risk that did not exist with respect to landlines: that third persons, not parties to the communication, would be able to obtain access to the communication. It was entirely reasonable for the California legislature to address this risk by enacting legislation that prohibited the recording of a conversation overheard, intentionally or inadvertently, by a third person. Here, Hilton was not a third person; it was an intended party to the communication initiated by Young and members of the purported class.

*Young v. Hilton Worldwide, Inc.*, 565 F. App'x 595, 599 (9th Cir. 2014).

Judge Motz also found it odd that liability would depend upon what technology a caller chose to employ. "Interpreting § 632.7 to apply only when third parties intercept or receive and record a communication avoids this quandary." *Id.* at 599.

After remand, the trial court granted Hilton's motion to dismiss on the ground that Section 632.7 did not prohibit Hilton Worldwide, Inc. from recording its own phone calls. The court reasoned as follows:

> Sections 632.5, 632.6, and 632.7 restrict *third-party* interception of cellular and cordless telephonic radio transmissions. The statutory scheme makes it clear that these sections refer to the actual interception or reception of these radio signals by third parties and do not restrict the parties to a call from recording those calls. The use of a landline telephone as Hilton allegedly did, was already expressly covered in Section 632, and to give independent meaning to Section 632.7 it would have to cover the radio signals it was meant to protect.

*Young v. Hilton Worldwide, Inc.*, No. 2:12-CV-01788-R-PJWX, 2014 WL 3434117, at *1 (C.D. Cal. July 11, 2014). In effect, the trial court adopted Judge Motz's view.

Judge Motz correctly identified the purpose of Section 632.7 and correctly found "receive" to be ambiguous. Judge Motz's and the trial court's analysis are further supported by the arguments and legislative history set forth above.

### 2. Contrary case law is not persuasive

Several other district courts have addressed the issues presented in this motion. See, *Brown v. Defender Sec. Co.*, No. CV 12-7319-CAS PJWX, 2012 WL 5308964, at *5 (C.D. Cal. Oct. 22, 2012); *Simpson v. Best W. Int'l, Inc.*, No. 3:12-CV-04672-JCS, 2012 WL 5499928, at *8 (N.D. Cal.

1 | Nov. 13, 2012).³ These decisions are not precedential and, therefore, only as good as the materials
2 | considered and reasoning presented.
3 |     No other case has discussed the totality of arguments presented above together with the
4 | relevant legislative history.
5 |     No court has considered the word "receive" based upon the directly applicable dictionary
6 | definition: "to convert incoming radio waves into perceptible signals." Instead, these decisions
7 | appear ignorant of the special definition of "receive" in connection with radio communication.
8 | Some of these decision attempt to derive the Legislature's intent exclusively from the text of Section
9 | 632.7, disregarding California's method of statutory interpretation.
10 |     Accordingly, this Court should consider the matters subject to judicial notice and determine
11 | for itself that the intent of the Legislature. Section 632.7 does not prohibit a party making a phone
12 | call from recording the communication.

### III. CONCLUSION

Section 632.7 was intended to prevent third parties from receiving and recording radio-transmitted phone calls. In the context of radio waves, the dictionary defines "receive" to mean "to convert incoming radio waves into perceptible signals." This definition is consistent with the intent of Section 632.7 to address third party reception of radio waves, and rules of statutory construction: each word should be given affect; construction should avoid absurd results; the rule of lenity.

Because section 632.7 does not apply to parties that initiate a phone call, the Complaint should be dismissed.

//
//

---

³ Some courts have also addressed an argument by some defendants that subdivision (b) of Section 623.7 permits recording. That argument is not relevant to the present motion. See, *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1005-08 (C.D. Cal. 2014); *Bernstein v. United Collection Bureau, Inc.*, No. 13-CV-01251-GPC-KSC, 2013 WL 5945056, at *2-3 (S.D. Cal. Nov. 5, 2013); *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 3:12-CV-01685-BAS, 2015 WL 1346110, at *4-6 (S.D. Cal. Mar. 24, 2015); *Bales v. Sierra Trading Post, Inc.*, No. 13CV1894 JM KSC, 2013 WL 6244529, at *3-4 (S.D. Cal. Dec. 3, 2013). At least one district court appears to have conflated these distinct issues. See *Horowitz v. GC Services Ltd. Partnership* (S.D. Cal., Apr. 28, 2015, 14CV2512-MMA RBB) 2015 WL 1959377, at *11-12.

Dated: 6/15/2015

LOSCH & EHRLICH

By: _____
Joseph Ehrlich
Mark R. Meyer
Attorneys for Defendant
Resort Vacations, Inc.